UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SYENSQO SPECIALTY POLYMERS USA, LLC,

Plaintiff,

v.

ARKEMA, INC.,

Defendant.

DOCKET NO.: ___________________

**COMPLAINT**

Plaintiff Syensqo Specialty Polymers USA, LLC ("Specialty Polymers") by and through its attorneys, hereby brings this Complaint against Defendant Arkema, Inc. ("Arkema"), and alleges as follows:

## NATURE OF THE ACTION

1. Between 1970 and 1990, predecessors to Arkema, Pennwalt Corporation ("Pennwalt") and its successor, Atochem North America, Inc. ("Atochem"), operated a chemical plant located at 10 Leonard Lane in West Deptford, New Jersey (the "Facility"). Between 1985 and 1990, Pennwalt and Atochem used over 53,000 pounds of a fluorinated process aid called Surflon® in their operations. Surflon® consists primarily of the ammonium salt of perfluorononanoic acid ("PFNA"), along with other per- and polyfluoroalkyl substances ("PFAS").

2. Through their operations, Pennwalt and Atochem discharged PFNA and other hazardous substances to the soil, groundwater, and surface waters at and adjacent to the Facility. Over the last thirty-five years, the PFNA attributable to Pennwalt and Atochem has spread beyond the boundaries of the Facility through groundwater, reaching the public drinking water supply wells of nearby municipalities and the private drinking water supply wells of nearby

residents. The PFNA discharged by Pennwalt and Atochem persists in the environment to this day.

3. On October 31, 1990, Atochem sold the Facility to Ausimont U.S.A., Inc. ("Ausimont") pursuant to an Asset Purchase Agreement ("APA"). Under the APA, Atochem contractually agreed to indemnify Ausimont for any and all liabilities that were not set forth or referred to on an Unaudited Statement of Tangible Net Assets appended to the APA. Atochem did not set forth or refer to any PFNA liabilities on the Unaudited Statement of Tangible Net Assets, and thus, Atochem is required to defend and indemnify Ausimont for those PFNA liabilities.

4. Specialty Polymers is Ausimont's successor and has continuously owned and operated the Facility since October 31, 1990. Since then, Specialty Polymers has taken responsibility for investigating and remediating hazardous substances in the environment at and potentially attributable to the Facility. In 2013, Specialty Polymers began an additional investigation and remediation into PFNA at and emanating from the Facility, including PFNA attributable to historic operations by Arkema's predecessors, Pennwalt and Atochem. Specialty Polymers' investigation and remediation of PFNA at and around the Facility is ongoing.

5. In 2024, Specialty Polymers entered into a Judicial Consent Order ("JCO") with the New Jersey Department of Environmental Protection ("NJDEP") to address PFAS in the environment at and potentially attributable to the Facility. Specialty Polymers agreed, among other things, to fully investigate and remediate PFAS at and emanating from the Facility, to pay NJDEP $101,050,000 to fund remedial projects to address PFAS impacts associated with the Facility, and to pay NJDEP $75,000,000 for natural resource damages associated with the Facility, in each case including PFNA attributable to Arkema's predecessors.

6. To date, Specialty Polymers has incurred more than $230 million in environmental costs to address PFNA at and potentially attributable to the Facility ("PFNA Costs") and will continue to incur hundreds of millions of dollars in PFNA Costs for decades to come.

7. Despite demands that Arkema indemnify Specialty Polymers for undisclosed liabilities attributable to Pennwalt's and Atochem's PFNA discharges under the APA, Arkema has refused to satisfy its contractual obligations. Specialty Polymers now seeks indemnification from Arkema for its past and future PFNA Costs and any other costs or damages attributable to Pennwalt's and Atochem's discharges of PFNA at the Facility.

**JURISDICTION AND VENUE**

8. This matter is properly brought before this Court pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between Specialty Polymers, a citizen of Delaware and Georgia, and Arkema, a citizen of Pennsylvania.

9. Venue is proper in this district under 28 U.S.C. § 1391(b) as Specialty Polymers' causes of action arise from the APA, which contains a forum selection clause requiring "any action or proceeding arising out of or relating to [the APA] or any other agreement or transaction contemplated hereby" to be brought in a New York state or federal court.

**PARTIES**

10. Specialty Polymers is a limited liability company duly organized under the laws of the State of Delaware. Its sole member is Ausimont Industries Inc., which is incorporated in Delaware and has its principal place of business located at 4500 McGinnis Ferry Road in Alpharetta, Georgia.

11. Arkema is a corporation duly organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 155 King of Prussia Road in Radnor, Pennsylvania.

## FACTUAL BACKGROUND

### Facility Overview

12. The Facility consists of approximately 243 acres in West Deptford, New Jersey. Approximately 34 acres of the Facility have been used for chemical manufacturing since 1970. The remainder of the Facility is either in its natural state or has been developed as a solar farm.

13. The Facility is bounded by the Delaware River to the north-northwest, Little Mantua Creek to the west, undeveloped property to the east, and a railroad line to the south.

### Pennwalt's and Atochem's Ownership of and Operations at the Facility

14. In 1969, Pennwalt acquired ownership of the Facility from National Steel Company.

15. From 1970 until 1983, Pennwalt manufactured chlorofluorocarbons at the Facility.

16. Between 1983 and 1985, Pennwalt built a polyvinylidene fluoride ("PVDF") resin manufacturing unit – modeled on its Calvert City, Kentucky facility – to produce PVDF, a specialized fluoropolymer plastic. PVDF manufacturing operations began in 1985.

17. In 1989, Elf Aquitaine, a French oil and gas company, acquired Pennwalt. In conjunction with this transaction, Pennwalt was merged with and into a U.S. subsidiary of Elf Aquitaine to form Atochem.

18. As a result of this merger, Atochem is the successor to Pennwalt.

19. Atochem continued to own and operate the Facility to manufacture PVDF until it sold the Facility in 1990.

20. To manufacture PVDF, both Pennwalt and Atochem used a fluorinated process aid called Surflon®, which consists primarily of the ammonium salt of PFNA, along with other PFAS. The Surflon® used was a white powdery material. Between 1985 and October 31, 1990, Pennwalt and Atochem used over 53,000 pounds of Surflon® in their operations at the Facility.

21. Pennwalt's and Atochem's operations caused the discharge of Surflon® into the environment in several different ways. Powdered Surflon® would spill and collect on the manufacturing floors at the Facility. When the floors were washed, any spilled Surflon® would drain into the Facility's wastewater treatment facility, where it was ultimately discharged into the Delaware River or into the local sewer system.

22. Pennwalt's chemical reactor also occasionally ruptured (by design, to prevent an explosion), causing its pressurized contents, including Surflon®, to blow out into the air and deposit on the ground. Rupture incidents were reportedly more frequent in the early years of PVDF manufacturing at the Facility.

23. During a site visit in 1986, NJDEP observed the presence of white powder, suspected to be Surflon®, on the ground near a drainage ditch that was released from a reactor rupture. Significant PFNA contamination has been detected in this area.

24. Upon information and belief, during Pennwalt's and Atochem's operations, Surflon® reached the environment at the Facility, allowing PFNA to reach Facility soils and groundwater.

25. Pennwalt modeled the PVDF manufacturing process at the Facility on an already-existing PVDF manufacturing plant Pennwalt operated in Calvert City, Kentucky. Arkema currently operates the Calvert City plant.

26. In 2022, the Kentucky Department of Environmental Protection ("KYDEP") conducted sampling along the Tennessee River, which borders the Calvert City plant. KYDEP detected high concentrations of PFNA in soils and sediment adjacent to the Calvert City plant.

The 1990 Asset Purchase Agreement

27. On February 26, 1990, Atochem sold the Facility to Ausimont via the APA. The APA transaction closed on October 31, 1990.

28. In Section 5.19 of the APA, Atochem agreed to "indemnify and hold harmless [Ausimont] for any and all liabilities, whether recorded, unrecorded, contingent or otherwise, that are not set forth or otherwise referred to on the Unaudited Statement of Tangible Net Assets."

29. The Unaudited Statement of Tangible Net Assets categorically lists the dollar amount of all assets and liabilities of Atochem's operations at the Facility, including all accrued liabilities.

30. Atochem specifically excluded environmental liabilities from its representation as to the accuracy of the Unaudited Statement of Tangible Net Assets.

31. Atochem further represented in the Unaudited Statement of Tangible Net Assets that "[a]s of September 30, 1989, there were no accruals for future environmental clean-up costs" related to Atochem's, and by extension its predecessor Pennwalt's, operations at the Facility.

32. Section 5.19 of the APA authorizes Ausimont to bring indemnification claims arising from liabilities that Atochem did not set forth or refer to on the Unaudited Statement of Tangible Net Assets.

33. Section 8.02 of the APA governs the process by which Ausimont can seek indemnification under Section 5.19.

34. Section 8.02(b) prohibits indemnification claims by Ausimont against Atochem unless the aggregate liabilities claimed exceed $1 million and provides that Atochem is not liable for the first $1 million of such claims.

35. Pursuant to Section 8.02(b), if Atochem has already indemnified Ausimont under the APA for a total amount equal to the purchase price of the assets acquired, Ausimont is precluded from asserting further indemnification claims against Atochem. Pursuant to a Second Amendment to the APA dated October 31, 1990, the purchase price of the assets Ausimont acquired in the APA was $110.1 million.

36. In Section 8.02(d) of the APA, Ausimont agreed to give Atochem "prompt notice" of any claim for indemnification.

Specialty Polymers Succeeds Ausimont's Rights Under the APA

37. In January 2003, Ausimont changed its name to Solvay Solexis, Inc. ("Solvay Solexis").

38. In November 2012, Solvay Solexis merged with and into Solvay Specialty Polymers USA, LLC, with Solvay Specialty Polymers USA, LLC as the surviving entity.

39. On September 12, 2025, Solvay Specialty Polymers USA, LLC changed its name to Syensqo Specialty Polymers USA, LLC.

40. Syensqo Specialty Polymers USA, LLC ("Specialty Polymers") is the successor to Ausimont.

41. As Ausimont's successor, Specialty Polymers has the right to indemnification under Sections 5.19 and 8.02(a) of the APA.

Arkema Succeeds Atochem's Obligations Under the APA

42. On December 31, 1991, Atochem changed its name to Elf Atochem North America, Inc. ("Elf Atochem").

43. In 1999, TotalFina, S.A. acquired 95% of the stock of Elf Aquitaine. TotalFina, S.A. subsequently changed its name to TotalFinaElf, S.A.

44. As a result of this transaction, TotalFinaElf, S.A. became the indirect parent company of Elf Aquitaine's U.S. subsidiaries, including Elf Atochem.

45. In 2000, TotalFinaElf, S.A. undertook a corporate reorganization that combined the chemicals business of itself and the newly acquired Elf Aquitaine entities, including Elf Atochem, into a different entity, Atofina Chemicals, Inc. ("Atofina"). Atofina continued as an indirect U.S. subsidiary of TotalFinaElf, S.A. Through this transaction, Atofina became the successor to Elf Atochem.

46. In 2004, Atofina changed its name to Arkema, Inc. ("Arkema").

47. As Atochem's successor, Arkema is responsible for Atochem's indemnification obligations under Sections 5.19 and 8.02(a) of the APA.

Specialty Polymers Has Incurred, and Will Continue to Incur, Losses Arising from PFNA Liabilities Not Set Forth or Referred to on the Unaudited Statement of Tangible Net Assets in the APA

48. Specialty Polymers, including through its predecessors, Ausimont and Solvay Solexis, has owned and operated the Facility since October 31, 1990.

49. Among other products, Specialty Polymers has manufactured PVDF at the Facility. Like Pennwalt and Atochem, Specialty Polymers also used Surflon® as a fluorinated process aid to manufacture PVDF until 2010.

50. At the time of the APA, Atochem was investigating potential environmental contamination due to its operations pursuant to the New Jersey Environmental Cleanup Responsibility Act ("ECRA"). In 1993, ECRA was amended and renamed the Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-6 *et seq*.

51. After the closing of the APA, Atochem continued to take the lead under ECRA until 1997, at which time Specialty Polymers assumed the lead for ECRA-required work. This ECRA matter does not address PFNA or other PFAS potentially attributable to Facility operations.

52. In 2013, Specialty Polymers began investigating PFAS at and potentially attributable to the Facility's operations from 1985 to the present, including PFNA. Specialty Polymers has collected thousands of environmental samples to investigate PFNA in soil, groundwater, and surface water at and around the Facility.

53. Specialty Polymers' PFAS-related environmental work has proceeded under a separate ISRA matter that is different from the ECRA matter that was ongoing at the time the APA transaction closed.

54. Specialty Polymers has also implemented several remedial actions to address PFNA at and emanating from the Facility, including (i) installing treatment systems to address PFNA in groundwater at and beyond the Facility, (ii) paying for point-of-entry-treatment ("POET") systems in private potable drinking water wells or paying to connect property owners with private wells to the public drinking water supply system, in each case to address PFNA

above applicable regulatory criteria; (iii) paying for treatment of public drinking water supply wells in West Deptford Township and Paulsboro to address PFNA above applicable regulatory criteria; and (iv) constructing an encapsulation remedy at the Facility to prevent further migration of PFNA in soils at the Facility to groundwater.

55. Based on years of environmental work, Specialty Polymers has determined that:

a. Pennwalt and Atochem discharged PFNA into soils at the Facility;

b. Pennwalt and Atochem discharged PFNA into groundwater at the Facility;

c. The PFNA discharged by Pennwalt and Atochem has migrated in groundwater beyond the boundaries of the Facility and has reached private potable drinking water wells and public potable drinking water supply wells in, at a minimum, West Deptford Township; and

d. Pennwalt and Atochem discharged PFNA into surface water bodies adjacent to or near the Facility, including Little Mantua Creek and the Delaware River.

56. In 2020, NJDEP commenced a civil action under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 *et seq.*, other New Jersey statutes, and the common law against Specialty Polymers and Arkema related to the investigation and remediation of, and natural resource damages for, hazardous substances discharged from the Facility, including PFNA.

57. On June 28, 2023, Specialty Polymers and NJDEP entered into a proposed Judicial Consent Order ("JCO") to resolve this litigation. On January 31, 2024, Specialty Polymers entered into a modified proposed JCO with NJDEP. The modified proposed JCO was approved by the New Jersey Superior Court on March 1, 2024.

58. Pursuant to the approved JCO, Specialty Polymers paid $3,781,963.69 to reimburse NJDEP's past costs, $75,000,000 in natural resource damages, and $101,050,000 for

remedial projects. NJDEP may use these remedial project funds to address, at a minimum, PFNA discharges from the Facility, including those attributable to Pennwalt's and Atochem's historic operations at the Facility from 1985 to 1990.

59. In addition, in the approved JCO, Specialty Polymers reaffirmed its commitment to complete the investigation and remediation of hazardous substances, including PFNA and other PFAS, at and potentially attributable to the Facility. The approved JCO recognizes that Specialty Polymers' investigation and remediation efforts will address PFNA discharges attributable to Pennwalt's and Atochem's historic operations at the Facility from 1985 to 1990. [*See* Specialty Polymers JCO ¶ 63 ("The Parties acknowledge and agree that [Specialty Polymers'] Remediation Activities, together with [Specialty Polymers'] payment for the Remedial Projects pursuant to Paragraph 4(c), will result in remediation of certain Discharges by the Site's prior owner.").]

60. Specialty Polymers has also been named as a defendant in several civil actions alleging, among other things, personal injuries purportedly attributable to PFNA discharges at and from the Facility, including during Pennwalt's and Atochem's historic operations at the Facility.

61. To date, Specialty Polymers has incurred hundreds of millions in PFNA Costs to investigate and remediate PFNA at and potentially attributable to the Facility. Far in excess of $1 million of these PFNA Costs are attributable to Pennwalt's and Atochem's operations at the Facility from 1985 to 1990, for which Arkema is liable.[1]

---

[1] Specialty Polymers only seeks to recover past PFNA Costs it incurred within the six-year statute of limitations applicable to actions related to contractual liability in CPLR § 213(2), subject to any tolling or extension of the limitations period. Specialty Polymers also seeks to recover any future PFNA Costs, other costs, or damages it incurs attributable to Pennwalt's and Atochem's undisclosed PFNA liabilities. Specialty Polymers does not seek to recover PFNA Costs, other costs, or damages beyond the purchase price set forth in the APA.

Arkema Refuses Specialty Polymers' Demand for Indemnification

62. In early 2014, the Borough of Paulsboro demanded from Specialty Polymers costs related to alleged PFNA contamination in its drinking water supply allegedly attributable to Facility operations.

63. Given the historic use of PFNA at the Facility by Pennwalt and Atochem, Specialty Polymers engaged in discussions with Arkema concerning a response to Paulsboro's demand.

64. On June 14, 2016, after several months of communications, Specialty Polymers formally demanded that Arkema indemnify Specialty Polymers under Section 5.19 of the APA for past and future costs associated with PFNA attributable to Pennwalt's and Atochem's historic operations at the Facility.

65. Specialty Polymers' engagement with Arkema and its June 14, 2016 formal demand served as "prompt notice" of Specialty Polymers' indemnification claim for PFNA attributable to Pennwalt's and Atochem's historic operations at the Facility from 1985 to 1990 for which Arkema is liable.

66. Specialty Polymers and Arkema spent years trying to negotiate a resolution of Specialty Polymers' indemnification demand, including while both parties were co-defendants in the litigation brought by NJDEP in 2020.

67. To date, Arkema has not indemnified Specialty Polymers for PFNA liabilities attributable to Pennwalt's and Atochem's historic operations.

**COUNT ONE**
(Contractual Indemnification)

68. The allegations set forth in paragraphs 1 through 67 are incorporated by reference as if set forth here in full.

69. The APA is a valid, legally binding contract.

70. As the successor to Atochem, Arkema is responsible for Atochem's obligations under the APA.

71. Section 5.19 of the APA requires Arkema to indemnify Specialty Polymers, as successor to Ausimont, for any and all liabilities Atochem failed to set forth or otherwise refer to on the Unaudited Statement of Tangible Net Assets.

72. In the Unaudited Statement of Tangible Net Assets, Atochem failed to set forth or otherwise refer to any environmental liabilities, including any personal injury liabilities based on exposure to PFNA, arising from Pennwalt's and Atochem's use of Surflon® and discharges of PFNA into the environment as a result of their PVDF manufacturing operations at the Facility.

73. Specialty Polymers already has incurred millions of dollars in PFNA Costs and will incur additional millions of dollars in future PFNA Costs, other costs, and damages to address PFNA for which Arkema owes an indemnification obligation under the APA.

74. Arkema has breached its indemnification obligation under the APA by refusing to indemnify Specialty Polymers for PFNA Costs and other costs and damages arising from PFNA discharges attributable to Pennwalt's and Atochem's historic operations at the Facility from 1985 to 1990.

75. Specialty Polymers is entitled to recover PFNA Costs and other costs and damages from Arkema as a result of Arkema's failure to satisfy its indemnity obligation under the APA.

**COUNT TWO**
(Declaratory Judgment)

76. The allegations set forth in paragraphs 1 through 75 are incorporated by reference as if set forth here in full.

77. An actual, substantial, and justiciable controversy exists between Specialty Polymers and Arkema regarding Arkema's obligation to indemnify Specialty Polymers under the APA.

78. Specialty Polymers seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, holding Arkema liable in indemnification for PFNA Costs and other costs and damages that Specialty Polymers has incurred and will continue to incur arising from PFNA discharges attributable to Pennwalt's and Atochem's historic operations at the Facility from 1985 to 1990.

**WHEREFORE**, Specialty Polymers requests all relief available to it by law, including but not limited to:

A. Judgment that Arkema is liable in indemnification to Specialty Polymers under the APA for PFNA Costs and other costs and damages arising from Pennwalt's and Atochem's historic use of Surflon® and discharges of PFNA at the Facility, and awarding compensatory damages to Specialty Polymers in an amount to be determined at trial;

B. A declaration holding Arkema liable to Specialty Polymers in indemnification for PFNA Costs and other costs and damages to be incurred by Specialty Polymers that arise from Pennwalt's and Atochem's historic use of Surflon® and discharges of PFNA at the Facility;

C. Interest and costs of suit, including experts' fees and expenses, and prejudgment interest; and

D. Any other, further, and different relief as the Court deems just and proper.

Dated: January 6, 2026

Respectfully submitted,

By: /s/ Kegan A. Brown

Kegan A. Brown
Taylor R. West
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 262-6700
Email: kbrown@lowenstein.com
Email: twest@lowenstein.com

*Attorneys for Plaintiff*
*Syensqo Specialty Polymers USA, LLC*